LOUISVILLE & WADLEY RAILROAD CO. *v.* HALL.

1. In the trial of a suit against a railroad company for the negligent killing of stock by the running of a train, evidence tending to establish that the stock were at large through no fault of the plaintiff was admissible.
2. When in such a trial the evidence was that the stock killed had been a part of a car-load of stock which had been transported by the defendant company, and tended to establish that the stock being at large was due to the fact that the defendant had failed to provide a stock-pen and other proper facilities for unloading stock, it was the duty of the court, without any request to that effect, to have instructed the jury that the escape of the mules under these circumstances would not of itself make the defendant liable in damages for the subsequent killing of the mules; and that the defendant would not be liable if at the time of the killing its agents and employees exercised all ordinary care and diligence to prevent the same. The rule here stated was essentially a part of the law of the case, an understanding of which by the jury was necessary to a fair and lawful trial.

Argued February 1, — Decided March 16, 1899.

Action for damages. Before Beverly D. Evans, judge pro hac vice. Jefferson superior court. May term, 1898.

*Phillips & Phillips*, for plaintiff in error.
*James K. Hines*, contra.

Cobb, J.   Hall sued the Louisville & Wadley Railroad Com-
pany for damages, alleging, in substance, that he was the owner
of four mules which, without the fault of petitioner, strayed
upon the track and grounds occupied by the defendant's line
of railway, near its terminus at Louisville; that the defendant
by its agents and servants so carelessly and negligently oper-
ated its train of cars that the same ran over and killed peti-
tioner's mules, to his damage.   It is further alleged that the
mules killed were a part of a car-load of mules transported by
defendant from Wadley to Louisville, reaching there about sun-
set on the day the mules were killed, but that, in consequence
of the fact that the defendant had its turntable at Louisville
torn up for repairs, and that it had none of the means and ap-
pliances by which stock could be quickly and safely unloaded
at this place, it was after night and very dark before the mules
could be unloaded.   The four mules above mentioned escaped
and ran down the track of the defendant, which fact was known
to the agents and servants of the defendant.   As soon as the
last of the mules were unloaded, the servants and agents in
charge of the train started to run the train back to Wadley, and
the train was negligently and without due care and caution
run at a rapid rate of speed toward Wadley; when it was known
to the employees in charge of the train that the mules were on
the track.   The servants and agents of the defendant failed to
keep a watchout for the mules, and were negligent in not run-
ning slowly until the mules could be taken from the track, by
reason of which negligence three of petitioner's mules were
killed outright and the fourth so wounded and damaged that
it was rendered worthless.

The defendant answered denying the allegations of negligence
charged against it.   At the trial the evidence for the plaintiff
tended to establish the allegations in the petition in reference to
the time at which the stock were unloaded and the cause of the
delay.   There was also testimony in his behalf as to the value
of the mules.   There was further testimony that when the mules
escaped from the car from which they were being unloaded, the

plaintiff called to one of his assistants, who was in the car at the time unloading the stock, that the mules had run down the railroad, and to go and get them; and that the conductor, engineer, and other train-hands were standing there at the time, sufficiently near to have heard what was said easier than the person to whom the order was addressed, who heard what was said. The plaintiff testified that the agent of the railroad at 'Louisville told him next morning that he heard him give the order in question. There is an embankment which reaches from near the depot to about three hundred yards below, and then the track runs in a cut from that point to near the stock-gap where the mules were killed. There is a road which crosses the track near the end of the embankment, and near this point is where the mules first came upon the track. A few minutes after the plaintiff ordered his assistant to go after the mules, and after he had gone, the train left for Wadley, running at a rapid rate of speed. The defendant had no stock-pen at Louisville. There was evidence for the defendant, that the delay in allowing the stock to be unloaded was but a few minutes after the train reached Louisville, and that it was dark when the train reached that place. The employees of the defendant in charge of the train were ignorant of the fact that the mules had escaped and run down the track. The night was dark and rainy, and there is a steep grade on the track leading down to the point where the mules were killed, so steep in fact that the train was allowed to run down it of its own weight, as was always done at this grade. The speed at which the train was run on this occasion was about fifteen miles per hour. The engine was in good condition, the headlight was in order, and the mules could not have been earlier discovered. The engineer was on the lookout for anything which might be upon the track. After the mules were discovered the engineer blew for brakes, reversed his engine, sanded the tracks, and did everything in his power to stop the train.

The jury returned a verdict for the plaintiff for $400 and costs of suit. The defendant's motion for a new trial having been overruled, it excepted. The original motion contained the general grounds. The first ground of the amended motion

was as follows : "The court erred in allowing Will Hall to testify as follows: 'The car reached Louisville before sundown, but the turntable was out of repair and they were working on it, and this caused delay in unloading the stock, and it was after night when we got them unloaded'; said testimony being objected to by defendant's counsel on the ground that such delay, if any, and the fact that the turntable was out of repair, if true, was not the proximate cause of the damage claimed, and could not be used as any evidence of negligence or want of ordinary care and diligence, when the damage alleged was the killing of certain mules on the line of the road at a different place from where the stock was unloaded." We do not think there was any error in admitting this testimony, nor do we think that the testimony was very material to the issues raised in the case. The way in which the mules escaped from the car having been described with great particularity in the petition, it was permissible to prove these allegations simply to show how the mules escaped and then account for their being at large. This evidence, however, throws very little light on the controlling question to be decided in the case, that is, whether the mules, after they escaped and wandered upon the track, were killed by the negligence of the defendant; but it was admissible for the purpose of showing that the mules were at large through no fault of the plaintiff. *Georgia Railroad Co.* v. *Neely,* 56 *Ga.* 543.

The second ground of the amended motion was as follows: "The court erred in not giving the jury instruction to the effect that the negligence complained of on the part of the plaintiff would have to operate as the cause of the damage sustained by him, and only such negligence as was the natural and proximate cause of the damage could be invoked against the defendant." We think it was error in the court to fail to charge the principle referred to in this ground. This was an action brought for the negligent killing of stock. Even if the defendant was negligent in failing to provide a stock-pen and other proper facilities for unloading stock, this had little bearing upon the real question at issue. It was proper to allege and prove the circumstances which brought about the escape

of the mules, and thus account for their being at large, simply to explain how they came to be upon the track; but these circumstances, no matter how pregnant with negligence on the part of the defendant, would not authorize a recovery for the subsequent killing of the stock, if in that transaction the agents and employees of the defendant were free from fault.    It was therefore all important to the defendant that the jury should be made clearly to understand that the failure to supply proper facilities for unloading these mules at the depot would not render the defendant liable for killing them at the stock-gap; and that if the engineer and other employees in charge of the train had exercised that degree of diligence that the law required, both in keeping a lookout for objects upon the track, and in endeavoring to save the stock from injury after their presence upon the track became known, there should be no recovery. The case of the plaintiff at best is weak and unsatisfactory. The testimony of the engineer and other persons on the train seems to establish that the killing of the mules was inevitable; and the only circumstance in the case that could be relied upon at all to hold the company liable was that the employees upon the train knew, before they left the station, that the mules had escaped and were at some point on the track.    The evidence as to this knowledge on the part of the employees was directly conflicting, and the great preponderance of the evidence was in favor of the view that the employees did not know this fact. In view of the character of the testimony on this important point, it was very material to the defendant that the jury should have been distinctly instructed that the question of the defendant's liability was to be determined by what occurred at the time the mules were killed.    We do not say that the plaintiff should recover in this case at all.    It is not necessary to decide that on this record, but it is clear to us that the case should be tried again, when the jury should, under proper instructions, be required to determine the question of the liability of the defendant by ascertaining whether there was any negligence on its part growing out of the killing of the stock upon the track.

*Judgment reversed.    All the Justices concurring.*